UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIM. NO. 14-202 (MJD/JSM)

     Plaintiff,                                   REPORT AND RECOMMENDATION

     v.

THETO DIEE HATLEY, Jr.,

     Defendant.


JANIE S. MAYERON, United States Magistrate Judge

     The above matter came before the undersigned United States Magistrate Judge on Defendant Theto Diee Hatley's ("Defendant") Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Def.'s Mot.") [Docket No. 18].   Assistant U.S. Attorney Thomas Calhoun-Lopez, Esq., appeared on behalf of the Government.   Manny K. Atwal, Esq., appeared on behalf of defendant, who was personally present.   This matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

     Defendant has been indicted on one count of being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).   Defendant moved to suppress physical evidence seized from defendant based on a warrantless search and seizure.   Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 18].   On July 28, 2014, this Court conducted an evidentiary hearing and took testimony from Sergeant Steve Anderson and Officer Christian Larson of the St. Paul Police Department.

## I.      FACTUAL BACKGROUND

Sergeant Anderson testified that the Midway Center area of St. Paul generates the highest number of narcotics complaints in the city and is a site of frequent drug arrests.   July 28, 2014 Transcript ("Tr."), 8 [Docket No. 24].   On November 22, 2013, five officers of the St. Paul Police Department were patrolling the Midway Center in an unmarked[1] SUV.  Tr. 7.   Each officer was wearing raid gear which clearly displayed the word "POLICE" on the front and back in bright yellow lettering.  Tr. 9-10.

Sometime after 8:00 p.m.,[2] officers saw a white Cadillac pull up next to a dark SUV in the Midway Center parking lot.  Tr. 8, 11.   Sergeant Steve Anderson, the lead officer, testified that as soon as the Cadillac stopped, the driver exited the vehicle, got into the passenger side of the dark SUV, and shut the door.  Tr. 11-12.   The driver of the Cadillac was later identified as having the initials A.C.  Tr. 12.   Sergeant Anderson, upon seeing A.C. enter the SUV, suspected that a drug deal was about to occur.  Tr. 12. Sergeant Anderson pulled up behind the Cadillac and SUV, perpendicular to both vehicles.   Tr. 13-14.   He did not activate his emergency lights.   Tr. 13.   Sergeant Anderson exited his vehicle and approached the passenger side of the dark SUV.  Tr. 14.   At the same time, Officer Christian Larson, one of Sergeant Anderson's colleagues, moved to the driver's side of the SUV.  Tr. 14.   Neither Sergeant Anderson nor Officer Larson drew their weapons.  Tr. 14, 41.

---

[1]      The term "unmarked" means that the vehicle lacks visible police insignia and appears at first glance to be a civilian vehicle.  Tr. 9.

[2]      Sergeant Anderson originally testified that the incident happened after 9:00 p.m. Tr. 8.   After consulting his police report from November 22, 2013, Sergeant Anderson stated that it was around 8:00 p.m.  Tr. 30.

When Sergeant Anderson reached the passenger side of the SUV, he used his flashlight to illuminate the interior of the vehicle.  Tr. 14-15.  Sergeant Anderson testified that he saw the passenger A.C. throw a Ziploc bag toward the floorboard behind the driver's seat.  Tr. 15-16.  The bag, according to Sergeant Anderson, contained a "green leafy substance consistent with marijuana."[3]  Tr. 16.  As Sergeant Anderson was inspecting the passenger side of the SUV, defendant, who was in the driver's seat, exited the vehicle and began walking toward Officer Larson.  Tr. 41.  Officer Larson ordered defendant to put his hands up, and defendant complied.  Tr. 41-42.  Officer Larson then began a pat-down search of defendant.  Tr. 42.  As soon as Officer Larson started his search, Sergeant Anderson yelled, "Hook him up," which signaled Officer Larson to place defendant in handcuffs.  Tr. 18-19, 43.  After handcuffing defendant, Officer Larson continued his pat-down search.  Tr. 44.  During the search, Officer Larson felt a lump in defendant's front left trouser pocket.  Tr. 45.  Officer Larson asked what the lump was, and defendant responded that it was "weed."  Tr. 45.  Officer Larson then retrieved the marijuana from defendant's pocket.  Tr. 46.

While Officer Larson was searching defendant, Sergeant Anderson opened the passenger door of the SUV and asked A.C. to exit the vehicle.  Tr. 19, 43-44.  Sergeant Anderson testified that when he opened the door he could smell a "strong odor of marijuana."  Tr. 19.  Sergeant Anderson then conducted a pat-down search of A.C.  Tr. 20.  As Sergeant Anderson was conducting the search, he asked A.C. if this was "just a weed deal."  Tr. 20.  A.C. responded, "Yeah."  Tr. 21.  Sergeant Anderson then handed

---

[3]     Sergeant Anderson testified that he is trained in drug recognition and investigation.  Tr. 16.  He has supervised the narcotics group of the St. Paul Police Department for the last ten years.  Tr. 16.

A.C. off to another officer.  Tr. 21.  Sergeant Anderson then entered the passenger side of the SUV.  Tr. 22.  First, Sergeant Anderson visually confirmed that the Ziploc bag of marijuana was behind the driver's seat.  Tr. 23.  He then began a search of the vehicle's "quick hides," which are places that someone could easily conceal objects in response to law enforcement.  Tr. 22.  When the quick hides produced nothing of interest, Sergeant Anderson began a search of the "hides."  Tr. 24.  The "hides" consist of hidden compartments or other parts of the vehicle that can be popped out or moved. Tr. 24.  As part of his search of the "hides," Sergeant Anderson removed the center console between the driver and passenger seats.  Tr. 25.  This revealed a hidden compartment in which Sergeant Anderson discovered a nine-millimeter handgun.  Tr. 25-26.

Defendant has moved this Court to suppress the firearm and marijuana obtained as a result of the search and seizure.[4]  Def.'s Mot., p. 1.

## II.    ANALYSIS

### A.    Search of Defendant's Vehicle

Defendant argued that there were no exceptions–the automobile exception, search incident to arrest, inventory search or the rule of inevitable discovery—that justify the warrantless search of his car.  Def's Mem., pp. 5-9.  The Government disagrees, contending that the search of defendant's vehicle was valid because it was incident to a

---

[4]     In defendant's motion he referenced the firearm found inside the car and the small amount of marijuana found on his person.  Def.'s Mot.  However, in his post-hearing brief, defendant stated that he was only moving to suppress the evidence inside the vehicle he was driving.  Defendant's Memorandum in Support of Motion to Suppress Evidence ("Def.'s Mem."), p. 1 [Docket No. 30].  Thus, it does not appear that defendant is challenging the marijuana found on his person.  Nonetheless, the Court will briefly address the propriety of the search of defendant.

valid arrest and was supported by probable cause pursuant to the "automobile exception" to the warrant requirement.   Government's Response to Defendant's Memorandum in Support of Motion to Suppress Evidence ("Gov't Resp."), p. 4 [Docket No. 31].

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires probable cause for lawful searches and seizures. U.S. Const. amend. IV; see also Illinois v. Gates, 462 U.S. 213, 230, 235 (1983).   "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."   United States v. Vore, 743 F.3d 1175, 1179 (8th Cir. 2014) (quoting Katz v. United States, 389 U.S. 347, 357 (1967) (footnote omitted)).   "One such exception is the automobile exception, which allows law enforcement to 'search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity.'"   United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011) (quoting United States v. Davis, 569 F.3d 813, 817 (8th Cir. 2009) (quoting United States v. Cortez–Palomino, 438 F.3d 910, 913 (8th Cir. 2006) (per curiam) (internal quotation marks omitted)).

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place."   United States v. Dactu, 627 F.3d 1074, 1077 (8th Cir. 2010) (quoting United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000)).   In determining whether an officer had probable cause to search, courts apply a

common sense approach and consider all relevant circumstances.  See United States v. Gleich, 397 F.3d 608, 612 (8th Cir. 2005) (citation omitted).  "[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication."  United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003) (marks and citation omitted).  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."  Id. (quoting United States v. Ross, 456 U.S. 798, 825 (1982)).

In addition to the automobile exception, without a warrant, police may search a vehicle incident to a lawful arrest "when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle."  Arizona v. Gant, 556 U.S. 332, 335 (2009).  "[S]uch a search must be confined to 'the arrestee's person' and 'the area from within which he might gain possession of a weapon or destructible evidence.'"  Id. at 361 (citing Chimel v. California, 395 U.S. 752, 762-63 (1969)).  A search incident to arrest is valid "only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search."  Id. at 343.  "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply."[5]  Id. (citing Preston v. United States, 376 U.S. 364, 367-68 (1964)).

---

[5]     The Gant Court also noted that, "[b]ecause officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that a real possibility of access to the arrestee's vehicle remains."  Gant, 556 U.S. at 343 n. 4.

In this case, officers had probable cause to search defendant's vehicle pursuant to the automobile exception. Sergeant Anderson—a trained narcotics agent—observed A.C. toss a bag containing what he believed to be marijuana behind the driver's seat of defendant's SUV. Tr. 15-16. A.C. then confirmed that marijuana was in the vehicle by admitting that he was making a "weed deal." Tr. 20-21. The entire incident took place in an area notorious for its high volume of drug transactions and arrests. Tr. 8. Based on the totality of the circumstances, a reasonable officer could believe that further evidence of drug trafficking would be found in defendant's vehicle. See Dactu, 627 F.3d at 1077.

Defendant argues that, because this was "just a weed deal," a reasonable officer would not have believed that any evidence, other than the bag of marijuana thrown by A.C., would be found in defendant's vehicle. Def.'s Mem., p. 3. It is well established, however, that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." Wells, 347 F.3d at 287 (quoting United States v. Ross, 456 U.S. 798, 825 (1982)); see also United States v. Hernandez-Mendoza, 600 F.3d 971, 976 (8th Cir. 2010) ("[D]rug traffickers have developed sophisticated means to secrete contraband in vehicles.") (citations omitted); United States v. Olivera-Mendez, 484 F.3d 505, 512 (8th Cir. 2007) ("Drug couriers may conceal contraband in a manner that requires dismantling of the automobile to recover the drugs . . . ."). Here, Sergeant Anderson saw, and A.C. admitted, that marijuana was in defendant's SUV. Thus, probable cause existed to search for drugs or drug-related contraband throughout the entire vehicle. See, e.g., Fladten, 230 F.3d at 1086 (officer's view of drugs through

automobile window "provided a substantial basis for the conclusion that further contraband or evidence may have been in the other parts of the automobile.").

In summary, because Sergeant Anderson had probable cause to believe that further evidence of marijuana trafficking could be found inside defendant's SUV, the automobile exception applies, and the handgun and marijuana found in the vehicle is therefore admissible.[6]  Defendant's motion to suppress the evidence seized in his car should be denied.

### B.    Discovery of Marijuana on Defendant's Person[7]

The Government asserted that Officer Larson's search of defendant, which produced a bag of marijuana, was permissible as a search incident to arrest, and alternatively, the search was permissible as a stop-and-frisk under Terry v. Ohio, 392 U.S. 1 (1968).  Gov't Resp., pp. 8-9.  As a general rule, a warrantless search of an arrestee's person, including personal property contained in his pockets, is valid as a search incident to arrest.  Riley v. California, 134 S.Ct. 2473, 2483 (2014) (citing United States v. Robinson, 414 U.S. 218 (1973)).  "'The authority to search the person incident

---

[6]      Having concluded that the automobile exception saves the warrantless search of defendant's vehicle, the Court need not address the Government's alterative argument that the warrantless search was valid because it was incident to arrest.  Gov't Resp. pp. 7-9.  However, the Court observes that at the time of the search of the vehicle, both defendant and A.C. were outside the vehicle, secured in handcuffs, and in the custody of five armed police officers.   Tr. 17, 21, 27.  Defendant and A.C. had immediately complied with law enforcement instructions and never attempted to escape or resist arrest.  Tr. 19-21, 41-46.  Under these circumstances, there was little possibility that either arrestee could have reentered defendant's vehicle to retrieve a dangerous weapon.  Accordingly, the warrantless search of defendant's vehicle was not justified as a search incident to arrest, and this Court rejects the Government's argument on that basis.

[7]      Although defendant moved to suppress the marijuana discovered during the search of his person, (see Def.'s Mot.), his memorandum made no mention of this issue.

to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.'" Id. (quoting Robinson, 414 U.S. at 235).  "Instead, a 'custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.'"  Id. (quotation omitted).  However, while a search incident to arrest needs no justification, the arrest itself must be supported by probable cause.  See United States v Brown, 101 F.3d 1272, 1275 (8th Cir. 1997) (citations omitted).  To determine the existence of probable cause, courts consider "the totality of the circumstances as set forth in the information available to the officers at the time of the arrest."  United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003) (citation omitted). Probable cause exists "when the available facts and circumstances are sufficient to warrant a person of reasonable caution to believe that an offense was being or had been committed by the person to be arrested."  Id. (citations omitted); see also United States v. Oropesa, 316 F.3d 762, 768 (8th Cir. 2003) (finding that probable cause "exists when at the moment of arrest police have knowledge of facts and circumstances grounded in reasonably trustworthy information sufficient to warrant a belief by a prudent person that an offense has been or is being committed by the person to be arrested.") (citation and internal quotation marks omitted).  Courts must give law enforcement officers "'substantial latitude in interpreting and drawing inferences from factual circumstances,' but such latitude is not without limits."  United States v. Adams, 346 F.3d 1165, 1170 (8th Cir. 2003) (quoting Kuehl v. Burtis, 173 F.3d 646, 650 (8th

Cir. 1999) (quoting United States v. Washington, 109 F.3d 459, 465 (8th Cir. 1997)). Accordingly, a "bare suspicion of criminal activity" is not enough to establish probable cause. Id. at 1169-70 (citing United States v. Morales, 923 F.2d 621, 624 (8th Cir. 1991)).

In addition to searches conducted incident to a valid arrest, an officer may perform a limited search of the suspect's outer clothing if "there is a reasonable suspicion that the suspect is armed and poses a danger to officers or others." United States v. Preston, 685 F.3d 685, 689 (8th Cir. 2012) (citing Terry, 392 U.S. at 29); United States v. Cotter, 701 F.3d 544, 547 (8th Cir. 2012) ("In addition, if the officer reasonably believes the person with whom he is dealing is armed and dangerous, he is permitted to conduct a protective search of the person's outer clothing, and any weapons seized as the result of such a search 'may properly be introduced in evidence against the person from whom they were taken.'") (quoting Terry, 392 U.S. at 30-31); United States v. Hughes, 517 F.3d 1013, 1016 (8th Cir. 2008) ("'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.'") (quoting Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) (quoting Terry, 392 U.S. at 24)). "While the 'purpose of a pat-down search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence,' and while such a search must 'be strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby,' officers may lawfully seize contraband they incidentally discover in 'plain touch' during a Terry frisk."

United States v. Bustos-Torres, 396 F.3d 935, 943-44 (8th Cir. 2005) (quoting Dickerson, 508 U.S. at 373). If, during the search, an officer "feels an object whose contour or mass makes its identity immediately apparent, [and] if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context." Id. at 944 (quoting Dickerson, 508 U.S. at 375-76) (emphasis in original).

In this case, officers had probable cause to arrest defendant for marijuana possession.[8] Sergeant Anderson directed Officer Larson to arrest defendant after Anderson confirmed that the Ziploc bag thrown by A.C. contained marijuana. Tr. 18. Based upon the totality of facts known at the time—that defendant was in a high-crime area with marijuana in his vehicle—Sergeant Anderson reasonably believed that defendant was committing a crime. Further, given that defendant was one of only two occupants of the SUV, it was reasonable for Sergeant Anderson to conclude that defendant possessed the marijuana, either alone or jointly with A.C. See Maryland v. Pringle, 540 U.S. 366, 372-73 (2003) (finding probable cause to arrest all three occupants of vehicle for drug possession, noting that "a car passenger . . . will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or evidence of their wrongdoing.") (citation and internal quotation marks omitted). Accordingly, defendant's arrest, and the search incident to that arrest, was valid.

Additionally, officers had a reasonable, particularized suspicion that defendant was armed and posed a threat to officer safety. Officer Larson testified that, as he

---

[8]     Under Minnesota law, "[a] person who . . . unlawfully possesses a small amount of marijuana is guilty of a petty misdemeanor . . . ." Minn. Stat. § 152.027 (2013).

approached the driver's side of defendant's SUV, defendant got out of the vehicle and started walking toward him.  Tr. 41.  In Officer Larson's experience, it was unusual for someone to exit his vehicle upon seeing the police.  Tr. 42.  Based on defendant's suspicious actions, the high-crime location, and the similarity of the situation to past drug transactions, Officer Larson believed that defendant was going to flee, fight, or interfere with the police investigation.  Tr. 43.  Further, Sergeant Anderson stated that persons involved in the drug trade are frequently armed.  Tr. 20.  When Sergeant Anderson spotted the bag of marijuana inside defendant's vehicle, he yelled, "Hook him up," which was intended to warn Officer Larson that there was a potentially dangerous situation at hand.  Tr. 18.  Under these facts, Officer Larson reasonably believed that defendant was armed and dangerous.  Accordingly, Officer Larson was permitted to search defendant's outer clothing for weapons.  When Officer Larson felt a bulge in defendant's trouser pocket, defendant admitted that it was marijuana.  Tr. 45-46.  At that point, Officer Larson was justified in seizing it, just as if the contraband had been in plain view.  See Bustos-Torres, 396 F.3d at 944.

For all of these reasons, the Court concludes that the search of defendant was valid and the marijuana found on his person should not be suppressed.

## III.    CONCLUSION

For the reasons set forth above, it is hereby RECOMMENDED that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 18] be **DENIED.**

Dated: September 8, 2014                         *Janie S. Mayeron*
                                                  JANIE S. MAYERON
                                                  United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 22, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.  Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before